Filed 10/16/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KARLA VANESSA COCA,<br><br>    Defendant and Respondent. | E079703<br><br>(Super.Ct.No. FWV031104)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Camber, Judge.  Reversed.

Jason Anderson, District Attorney, and Heather Dwyer, Deputy District Attorney for Plaintiff and Appellant.

Law Office of Zulu Ali & Associates, and Whitney Ali for Defendant and Respondent.

1

The San Bernardino County District Attorney (the District Attorney) appeals from a trial court order granting Karla Vanessa Coca's petition under Penal Code section 1473.7 to vacate a misdemeanor conviction. (Unlabeled statutory references are to the Penal Code.) We conclude that Coca failed to demonstrate by a preponderance of the evidence that "the conviction . . . being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1) (§ 1473.7(e)(1)).) We accordingly reverse the order.

## BACKGROUND

A. *Guilty Plea*

In May 2004, Coca was charged by felony complaint with one felony count of receiving stolen property in violation of section 496, subdivision (a) (section 496(a)) (count 1) and one felony count of second degree commercial burglary in violation of section 459 (count 2).

In March 2008, Coca pled guilty to one count of violating section 496(a), and the court dismissed count 2. The minute order from the plea and sentencing hearing indicates that Coca pled guilty to "Count 1, a felony reduced to M496A PC, a misdemeanor pursuant to" section 17, subdivision (b). (The plea agreement does not indicate whether Coca pled guilty to a felony or a misdemeanor.) The court sentenced Coca to a 36-month term of probation.

Coca signed an "Advisement of Rights and Waiver Form—Misdemeanor" in connection with the plea agreement. (Boldface and capitalization omitted.) Coca

2

initialed a box next to the following advisement: "I understand th[at if] I am not a United States citizen, my plea could [result] in my deportation, exclusion from future admission to the United States, or a denial of naturalization under the laws of the United States."[1]

Coca's attorney also signed the form. The attorney attested that she had explained to Coca "each of . . . her rights, the nature of and defenses to the charge(s), and the consequences of . . . her guilty/nolo contendere plea and admission." Coca's attorney "personally observed" Coca "read, initial, date and sign" the form.

B. *Motions to Vacate*

In May 2022, Coca filed a motion under section 1473.7, subdivision (a)(1) (§ 1473.7(a)(1)) to vacate the 2008 conviction. In an attached declaration, she stated that she is not a citizen of the United States but has been a resident since 1999. Coca noted that a "substantial amount" of her family lives in the United States, including her husband, daughter, grandmother, and brother. Concerning the 2008 conviction, Coca "believe[d]" that neither the court nor her attorney "properly advise[d]" her that she "was subject to detention or possible denial of relief, voluntary departure, bar from reentry, and / or any other consequences if" she pled guilty. She attested: "As a result, I am ineligible for cancellation of removal, asylum, adjustment of status, or any beneficial immigration status." She did not otherwise specify the allegedly adverse immigration consequences of her 2008 misdemeanor conviction.

---

[1] Some of the text in the copy of the form contained in the record on appeal is obscured by hole punches. We have bracketed the text that we filled in.

Coca also filed a second motion under section 1473.7(a)(1) to vacate another, older misdemeanor conviction. In 2004, Coca pled guilty to a misdemeanor violation of section 488, subdivision (a), petty theft. Coca represented herself during that proceeding. In her motion to vacate, she claimed that the court had not advised her of the immigration consequences of her guilty plea.

The District Attorney opposed the motion to vacate the 2008 misdemeanor conviction under section 496(a).[2] The District Attorney argued that Coca could not demonstrate prejudicial error because the section 496(a) conviction did not qualify as an aggravated felony or a crime involving moral turpitude and thus could not result in any potential adverse immigration consequences. The District Attorney attached numerous exhibits in support of the opposition, including Coca's certified rap sheet as of June 2021 and a probation report with the police report of the underlying incident attached.[3] In 2001, Coca was convicted in Los Angeles County of a misdemeanor violation of Vehicle Code section 31, giving false information to a peace officer. In 2008 (10 days before Coca pled guilty to the misdemeanor violation of section 496(a)), she was convicted in Los Angeles County of a misdemeanor violation of section 484, subdivision (a), petty theft.

---

[2]    The record on appeal does not include the District Attorney's written opposition, if any, to the motion to vacate the 2004 misdemeanor conviction.

[3]    The probation report is a one-page restitution memorandum in which the police report is not mentioned. It is unclear whether the police report was originally attached to the probation report or is a separate document.

C. *Evidentiary Hearing*

The trial court held a combined hearing on both motions to vacate. At the hearing, the court sustained Coca's attorney's objection to the admission of the police report.

Coca testified that she was born in Nicaragua in 1981. She moved to the United States sometime before she was five years old and has lived in the country since at least 1986. Until sometime around 2009, Coca believed that she was a United States citizen. She misunderstood the nature of immigration paperwork filed on her behalf when she was a minor. She became a legal permanent resident in 1999.

When Coca pled guilty to the section 496(a) offense in 2008, she believed that she was a citizen. If her attorney had asked Coca about her citizenship status, Coca would have told the attorney that she was a citizen. When Coca pled guilty, she was in custody and wanted to be released. After she entered the guilty plea, she was released from custody.

Coca testified that she did not recall having any conversations with her attorney about the possible immigration consequences of her 2008 guilty plea and also that her attorney did not talk to her about possible immigration consequences that could result from the guilty plea. Coca could not recall whether the court had given her any such advisement. Had Coca known when she pled guilty that she was not a citizen and that pleading guilty would adversely affect her immigration status, she would not have pled guilty. (Coca also testified concerning the 2004 conviction, but that conviction is not at issue on this appeal.)

5

Coca was not in removal proceedings. Asked about her current immigration status, Coca responded: "Right now, I'm in the process of—we put in paperwork. We just haven't heard anything yet."

The parties submitted after Coca testified. The District Attorney argued that the conviction was not an aggravated felony or a crime involving moral turpitude, "so there [were] no deportation—et cetera—consequences for this plea. [¶] So she couldn't prove prejudice on either one because there simply are no consequences." Coca's attorney countered that regardless of whether the misdemeanor convictions qualified as crimes involving moral turpitude, the United States Citizenship and Immigration Services could consider them in determining whether Coca possessed good moral character to become naturalized.

The trial court found credible Coca's testimony concerning her mistaken belief about being a citizen when she pled guilty. The court denied the motion to vacate the 2004 misdemeanor petty theft conviction, concluding that Coca "failed to demonstrate reasonable probability that if [she] had understood the immigration consequences of [her] plea [she] would not have pled no contest in that case." The court explained that Coca "had no priors," so the immigration consequences were not "very severe." But the court granted Coca's motion to vacate the 2008 misdemeanor conviction, reasoning "that by the time [Coca] got that case, [she] had three prior convictions. And that's when immigration consequences really become severe." The court found that Coca had "demonstrated a reasonable probability that if she understood the immigration consequences of her plea, she would not have pled guilty in that case, or she would have

tried to get a more immigration-safe plea. [¶] Therefore, the conviction in that case was legally invalid due to a prejudicial error damaging her ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or no contest."

DISCUSSION

The District Attorney contends that the trial court erred by granting Coca's section 1473.7(a)(1) motion to vacate the 2008 misdemeanor conviction. We agree.

A. *Section 1473.7*

Section 1473.7(a)(1) provides that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction" if it "is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." The legal invalidity finding is not dependent on a finding of ineffective assistance of counsel. (*Ibid.*) The movant has the burden of establishing entitlement to relief by a preponderance of the evidence. (§ 1473.7(e)(1).) The movant "shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (*Ibid.*)

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he [or she] would have rejected the plea offer had he [or she] understood its immigration consequences." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319; *People v. Vivar* (2021) 11 Cal.5th 510, 525-526.) Independent review in this

7

context is not synonymous with de novo review. (*Vivar, supra,* at p. 527.) We exercise "'independent judgment to determine whether the facts satisfy the rule of law.'" (*Ibid.*) In determining whether a defendant has made the evidentiary showing necessary to establish prejudicial error within the meaning of section 1473.7(a)(1), "we weigh all relevant circumstances, with no single factor being dispositive in our consideration of the totality." (*Espinoza, supra,* at p. 321.) We afford "particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar,* at pp. 527-528.)

B. *Analysis*

The District Attorney contends that the trial court erred by granting the motion to vacate because Coca failed to carry her burden of demonstrating by a preponderance of the evidence that the 2008 misdemeanor conviction was "causing or ha[d] the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7(e)(1).) We agree.

The District Attorney contends that the conviction does not render Coca subject to removal, because the conviction is not an aggravated felony or a crime involving moral turpitude. We agree. A noncitizen who commits either an aggravated felony or a crime involving moral turpitude is subject to removal. (8 U.S.C. § 1227(a)(2)(A)(i) & (iii); *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1174.) The misdemeanor conviction does not qualify as an aggravated felony. (Cf. 8 U.S.C. § 1101(a)(43)(G) [receipt of stolen property considered an aggravated felony when the term of imprisonment is at least one year]; *United States v. Flores* (9th Cir. 2018) 901 F.3d 1150, 1161 [conviction under

8

§ 496(a) "along with a sentence of more than one year of imprisonment[] is categorically an aggravated felony"]; see *id*. at p. 1161, fn. 14 [misdemeanor conviction under § 496(a) "can result in a sentence below section 1101(a)(43)(G)'s one year threshold"].) Coca does not argue to the contrary. Coca does argue, however, that the conviction has the potential to be considered a crime involving moral turpitude.

The generic definition of a crime involving moral turpitude under the Immigration and Nationality Act (INA) (8 U.S.C. § 1101, et seq.) "is a crime involving fraud or conduct that (1) is vile, base, or depraved and (2) violates accepted moral standards." (*Saavedra-Figueroa v. Holder* (9th Cir. 2010) 625 F.3d 621, 626.) To determine whether a state conviction is a crime involving moral turpitude under the INA, courts employ a three-step process: "At the first step, we compare the elements of the state offense to the elements of [a corresponding] generic offense [involving moral turpitude] defined by federal law. If this 'categorical approach' reveals that the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as [a crime involving moral turpitude]. When a statute is 'overbroad,' meaning that it criminalizes conduct that goes beyond the elements of the federal offense, we turn to step two: determining whether the statute is 'divisible' or 'indivisible.'" (*Almanza-Arenas v. Lynch* (9th Cir. 2016) 815 F.3d 469, 475 (*Almanza-Arenas*).) "A statute is divisible if it has 'multiple, alternative elements, and so effectively creates several different crimes.'" (*Fernandez v. Barr* (9th Cir. 2020) 969 F.3d 1077, 1086.) If the statute "has an indivisible set of elements with different means of committing one crime" (*ibid.*), then the "'inquiry ends,

9

because a conviction under an indivisible, overbroad statute can never serve as a predicate offense.'  Only when a statute is overbroad and divisible do we turn to step three—the 'modified categorical approach.'  At this step, we may examine certain documents from the defendant's record of conviction to determine what elements of the divisible statute he [or she] was convicted of violating."  (*Almanza-Arenas*, *supra*, at p. 475.)

Section 496(a) provides:  "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished" as specified in the statute.  The elements of receiving stolen property under section 496(a) "are (1) stolen property; (2) knowledge that the property was stolen; and (3) possession of the stolen property."  (*People v. King* (2000) 81 Cal.App.4th 472, 476.)

Relying on *Castillo-Cruz v. Holder* (9th Cir. 2009) 581 F.3d 1154 (*Castillo-Cruz*), the District Attorney contends that receipt of stolen property under section 496(a) is not a crime involving moral turpitude.  We agree.  In *Castillo-Cruz*, the Ninth Circuit applied the categorical approach and compared section 496(a) to a generic theft offense.  (*Castillo-Cruz*, *supra*, at pp. 1160-1161.)  The court explained that to qualify as a crime involving moral turpitude a theft offense must include "the offender's 'intention to permanently deprive the owner of his property.'"  (*Id.* at p. 1160 & fn. 8.)  Analyzing whether a conviction under section 496(a) criminalized conduct broader than that

10

required for a generic federal theft offense, *Castillo-Cruz* reasoned that receipt of stolen property under section 496(a) does not "require an intent to permanently deprive the owner of property" (*Castillo-Cruz*, at p. 1161) "but rather permits conviction for an intent to deprive an individual of his property temporarily" (*id.* at p. 1160). The court concluded: "Receipt of stolen property under [section 496(a)] thus falls outside the generic definition of an offense, such as theft, that involves an intent to permanently deprive an individual of his property, and, accordingly, outside the generic definition of a crime of moral turpitude." (*Id.* at pp. 1160-1161.)

Section 496(a) thus does not qualify as a crime involving moral turpitude categorically. (*Castillo-Cruz, supra*, 581 F.3d at pp. 1160-1161.) Because a misdemeanor conviction under section 496(a) also is not an aggravated felony, we conclude that Coca did not carry her burden under section 1473.7(e)(1) of demonstrating that the conviction had the potential of subjecting her to removal.[4] (8 U.S.C. § 1227(a)(2)(A)(i).)

Coca acknowledges that *Castillo-Cruz, supra*, 581 F.3d 1154, held that the minimum conduct necessary to receive stolen property in violation of section 496(a) requires the intent to temporarily deprive an owner of property, which is not a crime involving moral turpitude. She also concedes that section 496(a) "is both overbroad and

---

[4]    In 2016, the Board of Immigration Appeals (BIA) adopted a broader definition of when a state theft offense can qualify as a crime involving moral turpitude. (*Matter of Diaz-Lizarraga* (2016) 26 I. & N. Dec. 847, 854.) However, because Coca pled guilty to the relevant charge "before the BIA changed its interpretation, the new standard does not apply retroactively to [her] case." (*Barbosa v. Barr* (9th Cir. 2019) 926 F.3d 1053, 1058.)

11

indivisible" compared to the generic federal definition of a corresponding crime involving moral turpitude, so a section 496(a) conviction is not a crime involving moral turpitude. But Coca argues that her conviction still has the potential to be considered a crime involving moral turpitude because it is not clear from her record of conviction whether she intended to deprive the owner of property temporarily or permanently.

The argument lacks merit. Given Coca's concession that section 496(a) is overbroad and indivisible, it follows that a conviction under the state statute "'can never serve as a predicate offense'" involving moral turpitude. (*Almanza-Arenas*, *supra*, 815 F.3d at p. 475.) And "[b]ecause the statute is overbroad and indivisible, . . . the modified categorical approach 'has no role to play'" (*Lopez-Valencia v. Lynch* (2015) 798 F.3d 863, 870), so Coca's record of conviction is not relevant. (See *id.* at pp. 868-870 [concluding that a theft offense under § 484 is not divisible].) Coca does not identify any other reason why the conviction has the potential to result in adverse immigration consequences, and we are not aware of any.

Because Coca did not carry her burden of demonstrating by a preponderance of the evidence that the 2008 misdemeanor conviction under section 496(a) was "causing or ha[d] the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization" (§ 1473.7(e)(1)), we conclude that the trial court erred by granting Coca's motion to vacate the conviction. We accordingly reverse the order granting the motion. We need not and do not address the District Attorney's remaining arguments.

DISPOSITION

The August 22, 2022, order granting Coca's section 1473.7(a)(1) motion to vacate her 2008 misdemeanor conviction under section 496(a) is reversed, and the superior court is directed to enter an order denying the motion.

CERTIFIED FOR PUBLICATION

MENETREZ
J.


We concur:

CODRINGTON
        Acting P. J.
RAPHAEL
J.